FILED
2014 Jul-24  AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARK S. LANDERS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-12-S-4045-NE |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mark S. Landers, filed a "Complaint for Disclosure of Agency Documents" on December 6, 2012, asking that the Federal Bureau of Investigation ("FBI") be required to disclose certain information pursuant to the Freedom of Information Act, 5 U.S.C. § 552.[1] The United States Department of Justice later was substituted, by consent of the parties, for the FBI.[2] The case currently is before the court on cross-motions for summary judgment.[3] Upon consideration of the motions, briefs, and evidence, the court concludes that it should conduct an *in camera* review

---

[1] Doc. no. 1 (Complaint for Disclosure of Agency Documents). The original complaint was amended on June 10, 2013, to make more specific allegations about which documents were allegedly being withheld. Doc. no. 12 (Amended Complaint).

[2] *See* doc. no. 13 (Order substituting the United States Department of Justice for the FBI as defendant).

[3] Doc. no. 16 (plaintiff's motion for summary judgment); doc. no. 17 (defendant's motion for summary judgment).

of the disputed documents before rendering a final decision on the motions for summary judgment.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover,

[t]he mere existence of some factual dispute will not defeat summary

> judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied). *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

> "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact. Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.*, 541 F. Supp. 2d 1295, 1297-98 (M.D. Fla. 2008) (alteration in original). *See also American Bankers*

3

*Insurance Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court reviews the district court's disposition of cross-motions for summary judgment *de novo*, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II. SUMMARY OF FACTS

Plaintiff has offered no actual evidence in support of his claims.  *See* Fed. R. Civ. P. 56(a) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .").  His original and amended complaints were not verified.  The only evidence he cites in his briefs is a "Request for Discovery and Inspection" his attorney filed on November 20, 1996, during the state court criminal proceedings.[4]  Plaintiff repeatedly attempts to characterize that document as a FOIA request directed to the FBI, but that characterization clearly is incorrect.  The first sentence of the document reads:

---

[4] Doc. no. 16, at Exhibit 1 ("Request for Discovery and Inspection").

4

"COMES NOW the Defendant in the above-styled cause and requests *the State* to produce the following documents and/or things . . . ."[5]  Because the document does not relate to a FOIA request, it is largely irrelevant to the claims in this case.  The remainder of plaintiff's proposed facts consist of conclusory statements without any evidentiary support.

Nevertheless, to the extent defendant has admitted some of plaintiff's proposed facts, the court will consider them.  Otherwise, plaintiff's conclusory statements are insufficient for consideration on summary judgment.

## A.    FBI Record Storage and Search Procedures

The FBI uses the Central Record System ("CRS") to maintain information it has acquired during the course of fulfilling its law enforcement responsibilities.  The CRS uses "a numerical sequence of files, called FBI 'classifications,' which are broken down according to subject matter.  The subject matter of a file may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program)."[6]  Records may be stored at FBI headquarters, or at particular FBI field offices.[7]  Records stored in the CRS can be searched electronically by using

---

[5] *Id.* at 1 (emphasis supplied).

[6] Defendant's evidentiary submission, Exhibit 1 (Affidavit of David M. Hardy) ¶ 28.

[7] *Id.*

a computerized system called the Automated Case Support System ("ACS").[8]

The ACS searches the "General Indices" of the CRS, which "consist of index cards on various subject matters" arranged in alphabetical order.[9]  The entries in the General Indices fall into two categories:

> (a) A "main" entry — A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry — A "reference" entry, sometimes called "cross-references," are [*sic*] generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.[10]

The FBI's current policy is to search for and identify only potentially responsive "main" files during the initial administrative stage of FOIA and Privacy Act requests. The FBI will search for and identify "cross-reference" files only "if there is sufficient information to conduct such a search."[11]

## B.    Plaintiff's Information Requests and the FBI's Responses

Plaintiff, Mark Landers, was convicted of murdering his father on May 9, 1997, and he currently is serving a life sentence without the possibility of parole.[12]  On May

---

[8] *Id.* ¶¶ 28-29.

[9] *Id.* ¶ 30.

[10] *Id.*

[11] *Id.* ¶ 34.

[12] Hardy Affidavit ¶ 6.  *See also* doc. no. 16 (Plaintiff's Motion for Summary Judgment), at 1 (Plaintiff's Statement of Undisputed Facts ¶¶ 1-2); doc. no. 20 (Defendant's Opposition to Plaintiff's Motion for Summary Judgment), at 1 (Defendant's Response to Plaintiff's Statement of

22, 2007, he sent a letter and Freedom of Information/Privacy Act Request to the FBI, stating: "I am requesting a copy of my entire F.B.I. file to include all records, documents and information you have in your file pertaining to me or mentioning my name."[13]  By letter dated September 12, 2007, the FBI acknowledged that it had received plaintiff's request and assigned it a file number.  The FBI informed plaintiff that it was "searching the indices to our central records system for the Birmingham Field Office for the information you requested, and will inform you of the results as soon as possible."[14]  The FBI searched the CRS to identify all potentially responsive "main" files in the Birmingham and Montgomery Field Offices for "Mark Samuel Landers," "Mark S. Landers," "Mark Landers," "M. Samuel Landers," "M.S. Landers," and "Samuel Landers."  The search did not reveal any responsive documents.[15]  Therefore, in another letter dated October 2, 2007, the FBI stated: "To promptly respond to requests, we concentrate on identifying main files in the central records system for the Birmingham and Mobile Field Offices.  No records responsive to your FOIPA [*i.e.,* "Freedom of Information-Privacy Acts"] request were located by a search of the automated and manual indices."[16]  The letter also informed plaintiff

---

Undisputed Material Facts) ¶¶ 1-2 (admitting Plaintiff's Proposed Facts 1-2).

   [13] Hardy Affidavit ¶ 8 and Exhibit A.

   [14] *Id.* ¶ 9 and Exhibit B.

   [15] *Id.* ¶ 35.

   [16] *Id.* ¶ 10 and Exhibit C (alteration supplied).

of his right to file an appeal with the Office of Information and Privacy at the United States Department of Justice within sixty days.[17]

Plaintiff appealed by sending a letter to the Office of Information and Privacy on October 10, 2007. He included "copies of sworn testimony from Alabama Bureau of Investigations Officer William Rhengness," which presumably originated from the state court criminal proceedings.[18] During his testimony, Officer Rhengness referred to three FBI agents with whom he had worked during the investigation into the death of plaintiff's father. He also referred to a report in plaintiff's "case package" that was never provided to plaintiff or his criminal defense attorney. Plaintiff asked the Office of Information and Privacy to "run a thorough check for this missing report."[19] The Associate Director of Office of Information and Privacy responded to plaintiff's appeal with a letter dated November 5, 2007, stating, in relevant part:

> After carefully considering your appeal, and as a result of discussions between the FBI and a member of my staff, I am remanding your request for a further search. If the FBI locates responsive records through this search, it will send any and all releasable portions of them to you directly, subject to any applicable fees. You may appeal any future adverse determination made by the FBI.
>
> If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

---

[17] *Id.*

[18] *Id.* ¶ 11 and Exhibit D.

[19] Hardy Affidavit ¶ 11 and Exhibit D.

After the matter was remanded to the FBI, it searched for "main" files in the FBI Headquarters database containing the same six potential variations of plaintiff's name that had previously been searched.[20]  Plaintiff received a letter from the FBI dated July 3, 2008, informing him that two pages of information responsive to his request had been located, but that the pages would not be produced because they were "exempt in their entirety pursuant to Title 5, United States Code, Section 552 and Section 552(a), subsections (b)(2), (b)(6), (b)(7)(C), (b)(7)(E) and (j)(2) of the Freedom of Information and Privacy Act."[21]  The FBI again informed plaintiff of his right to file an appeal within sixty days.[22]

Plaintiff submitted an appeal to the Office of Information and Privacy on July 31, 2008.[23]  The Associate Director of the Office of Information and Privacy responded to plaintiff's appeal on November 18, 2008, stating:

> After carefully considering your appeal, I am affirming, on partly modified grounds, the FBI's action on your request.  The records responsive to your request are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.96 (2008).  Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to them.

---

[20] *Id.* ¶ 37.

[21] *Id.* ¶ 14 and Exhibit G.

[22] *Id.*

[23] *Id.* ¶ 15 and Exhibit H.

The FBI properly withheld this information in its entirety because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(E). This provision concerns records or information compiled for law enforcement purposes[,] the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.[24]

Plaintiff's next communication with the FBI occurred on June 16, 2009, when he wrote to request a "*Vaughn* Index" with regard to the two pages the FBI claimed were exempt from production.[25]  A *Vaughn* Index is somewhat akin to a privilege log. As the Supreme Court has explained:

"*Vaughn* Index" is a term derived from *Vaughn v. Rosen*, 157 U.S. App. D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564, 39 L. Ed. 2d 873 (1974).  The "Index" usually consists of a detailed affidavit, the purpose of which is to "permit the court system effectively and efficiently to evaluate the factual nature of disputed information." 157 U.S. App. D.C., at 346, 484 F.2d, at 826.

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 n.2 (1989).  There is no indication in the record that the FBI ever responded to plaintiff's request for a *Vaughn* Index.

Plaintiff's next communication with the FBI occurred on June 1, 2012, when his attorney sent the FBI a formal FOIA request stating, in pertinent part:

This is a request under the Freedom of Information Act.  I am requesting all F.B.I. files, records, and documentation relating to my

---

[24] *Id.* ¶ 17 and Exhibit J (alteration supplied).

[25] Hardy Affidavit ¶ 18 and Exhibit K.

client, **Mark Samuel Landers**[,] or mentioning his name.  I also request that a "Vaughn Index" concerning any such materials related to Mr. Landers be provided.  Please search the F.B.I.'s indices to the Central Records System for the information responsive to this request related to Mr. Landers.[26]

The FBI responded to plaintiff's attorney on June 11, 2012, with a letter stating that plaintiff's request had been received for processing, and that the FBI would search the indices to its Central Records System for information responsive to the request.[27] The FBI then sent plaintiff's attorney a letter that was undated, but was mailed on June 28, 2012, stating that a new search of the indices to the Central Records System had been conducted, but it did not produce any additional records responsive to plaintiff's request.  The FBI also stated that it had reviewed the responsive material located in 2008, and confirmed that the material remained exempt from production for the reasons previously stated.  Plaintiff was once again informed of his right to appeal within sixty days.[28]

Plaintiff's attorney submitted an appeal to the Office of Information Policy on August 9, 2012.[29]  The appeal letter stated:

---

[26] Hardy Affidavit ¶ 19 and Exhibit L (emphasis in original) (alteration supplied).

[27] *Id.* ¶ 20 and Exhibit M.

[28] *Id.* ¶ 21 and Exhibit N.

[29] The court can discern no explanation from the record whether the "Office of Information and Privacy" and the "Office of Information Policy" are the same office and, if they are not, what is the difference between the two.

I am writing to appeal the FBI's denial of my above referenced FOIPA request relating to my client, Mark Landers.  The FBI has confirmed that they do have records relating to my client, but that such records will not be produced.  It appears that your office has previously upheld this decision under 5 U.S.C. § 552(b)(7)(E).

My client is currently serving a life without parole sentence in Alabama for murder.  It is believed that the records in the FBI's possession may contain exculpatory or otherwise beneficial information in this regard.  Accordingly, it is of great interest to my client to receive some type of meaningful information concerning these records.

As I'm sure you know, it is quite a difficult task to appeal a denial based on 5 U.S.C. § 552(b)(7)(E) when absolutely no information has been given about the records besides the fact that they exist.  However, given the common and vast distribution of investigative materials by the Department of Justice through the courts' discovery process, it is difficult to understand how the release of two (2) pages of FBI Documents related to Mr. Landers "could reasonably be expected to risk circumvention of the law" as required by the relevant statute.  As such, my client requests a re-review of these documents to determine if such a danger truly exists.  We also ask that your office consider minimizing any fears through redaction of the documents before they are released. Additionally, we request an adequate and meaningful description of any documents withheld or redacted, and the justification for doing so.[30]

The Office of Information Policy responded to plaintiff's appeal by letter dated

September 21, 2012, informing plaintiff that the denial of his request was affirmed

under 5 U.S.C. § 552(b)(7)(E), which protects records or information compiled for

law enforcement purposes.  Plaintiff's request for an itemization and justification for

each item withheld was denied, as plaintiff was "not entitled to such a listing at the

---

[30] *Id.* ¶ 22 and Exhibit O.

administrative stage of processing FOIA requests and appeals."[31]

The next action occurred on December 6, 2012, when plaintiff filed his complaint in this case.[32]  The FBI conducted a "cross-reference" search on February 8, 2013, and located one cross-reference concerning plaintiff in a ViCAP file.[33]  Upon further investigation, the FBI determined that the file actually was a "main" file, and that it had been erroneously indexed as a cross-reference.[34]  The FBI also determined that the two responsive pages it previously located actually were only a ViCAP *summary* printout and, after consulting with ViCAP, the FBI was able to locate 23 additional responsive pages.[35]

Consequently, the FBI mailed plaintiff a letter on March 27, 2013, stating, in pertinent part:

---

[31] *Id.* ¶ 24 and Exhibit Q.

[32] Doc. no. 1 (Complaint).

[33] ViCAP is an acronym for "Violent Criminal Apprehension Program."

ViCAP maintains a large investigative repository of information relating to major violent crimes, including homicide.  ViCAP's mission is to operate and maintain the ViCAP Web National Crime Database.  This is a nationwide investigative repository of violent crimes.  ViCAP provides crime analysis support to investigative and analytical components of crimes.  ViCAP provides crime analysis support to investigative and analytical components of local, state, and federal law enforcement agencies by collecting, assessing, collating, and analyzing case information.  They also provide investigative leads and recommendations, develop and produce analytical products, and facilitate multi-agency coordination.

Hardy Affidavit ¶ 7.

[34] *Id.* ¶ 39.

[35] *Id.* ¶ 40.

13

In addition to the original search conducted in connection with your request, the FBI conducted another search including a search of cross-reference files. This additional search identified Mobile Field Office file 252B-MO-36103 and file IR252A-C936. The responsive records from these files have been processed and information not subject to a FOIA exemption is being released to you. Of the 74 pages processed, 15 pages were withheld in part per a FOIA exemption, 35 pages were withheld in full per a FOIA exemption, 9 pages were withheld as duplicates, and 15 pages were released in full.

The enclosed documents are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), subsection (j)(2). However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

Plaintiff also was informed that he had the right to appeal to the Office of Information

Policy within sixty days.[36]

In another letter dated June 20, 2013, the FBI informed plaintiff as follows:

Following further consultation with subject matter experts working within the FBI's Violent Criminal Apprehension Program ("VICAP"), the FBI has determined that additional information may be released to you. Enclosed are four pages which were initially removed in full per FOIA exemptions as listed in the FBI's March 27, 2013 release letter. The pages were marked FBI Bates Pages Landers-50, Landers-51, Landers-73 and Landers-74. Two of these pages are now being released in part (Landers-50 and Landers-73) with applicable FOIA exemptions asserted and two pages are being released in full (Landers-51 and Landers-74).[37]

---

[36] *Id.* ¶ 26 and Exhibit R, at 2.

[37] *Id.* ¶ 27 and Exhibit S, at 2.

The letter indicated on a previous page that the FBI was relying on the exemptions found in 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C), and 552a(j)(2).[38]

## III. DISCUSSION

The Freedom of Information Act ("FOIA") requires federal agencies to make certain records and other information available to the public upon request. *See generally* 5 U.S.C. § 552(a). "The purpose of FOIA 'is to encourage public disclosure of information so citizens may understand what their government is doing.'" *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1244 (11th Cir. 2008) (quoting *Office of Capital Collateral Counsel, Northern Region of Fla. v. United States Department of Justice*, 331 F.3d 799, 802 (11th Cir. 2003)). As such, FOIA is "a broad disclosure statute which evidences a 'strong public policy in favor of public access to information in the possession of federal agencies.'" *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir. 1985) (citations omitted).

Even so, "'Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information,' . . . and provided for certain exceptions to the rule of broad disclosure." *News-Press v. United States Department of Homeland Security*, 489 F.3d 1173, 1191 (11th Cir. 2007) (quoting

---

[38] *Id.*, Exhibit S, at 1.

*Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982)). In keeping with the policy behind the Act, the exceptions are construed narrowly, and the government bears the burden of proving that a requested document is exempted. *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. National R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004) (citations omitted). The government can satisfy that burden by producing affidavits or a *Vaughn* Index, or by submitting the withheld documents to the court for *in camera* review. *Miccosukee Tribe*, 516 F.3d at 1258. Any affidavits must "provide an adequate factual basis for the district court to render a decision." *Id.* (citing *Miscavige v. I.R.S.*, 2 F.3d 366, 368 (11th Cir. 1993)). If the government relies on a *Vaughn* index, it must contain "'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Id.* (quoting *Mead Data Central, Inc. v. U.S. Department of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977), and also citing *Dellums v. Powell*, 642 F.2d 1351, 1361 (D.C. Cir. 1980)).

If an individual believes an agency has wrongly withheld information or records, he can file a complaint with a federal district court, which "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. §

552(a)(4)(B).  "In such a case the court shall determine the matter *de novo,* and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." *Id.*

Defendant relies upon FOIA exemptions 6, 7(C), 7(D), and 7(E) to support its withholding and redaction of certain pages requested by plaintiff.  Exemption 6 allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7 allows the government to withhold the following items, among others:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7).  Pursuant to Exemptions 6 and 7(c), the FBI states that it has withheld the names and/or other identifying information for "FBI special agents and support personnel, third parties who provided information to the FBI, third parties merely mentioned in the records, and state and/or local law enforcement officers."[39] The FBI also states that it has asserted Exemption 7(D) "to protect confidential sources and confidential source information."[40]  Finally, the FBI states that it has asserted Exemption 7(E) "to protect interviewing methods, local law enforcement agency documents, behavioral analysis questions, and sensitive ViCAP information."[41]

As evidentiary support for the application of those exemptions, defendant offers the affidavit of David M. Hardy, the Section Chief of the FBI's Record/Information Dissemination Section, who spends thirty-six paragraphs, spread over approximately seventeen pages, explaining the reasons for withholding documents pursuant to each exemption.  Defendant also provides copies of all the documents it *did* produce to plaintiff,[42] and a *Vaughn* Index detailing, for each category of information requested by plaintiff:  the total number of pages; the date of

---

[39] Doc. no. 18 (Memorandum in Support of Defendant's Motion for Summary Judgment), at 22.

[40] *Id.* at 25-26.

[41] *Id.* at 26.

[42] Hardy Affidavit, at Exhibit U.

creation; any applicable exemption and an explanation of its application; the FBI's decision on the request; and the corresponding paragraphs of Hardy's affidavit.[43]

Upon review of all the information currently in the record, the court is inclined to conclude that defendant has satisfied its burden of proving it properly withheld and/or redacted portions of the requested information pursuant to the cited exemptions. Even so, out of an abundance of caution, *and*, in keeping with the "'strong public policy in favor of public access to information in the possession of federal agencies,'" the court will conduct an *in camera* review of the contested documents to determine whether they fall under any of the applicable exemptions. *Cochran*, 770 F.2d at 954.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, defendant is ORDERED to produce, for *in camera* review, all of the documents it has withheld in response to plaintiff's FOIA requests. Paper copies of those documents must be organized in a three-ring binder and submitted to the chambers of the undersigned on or before the close of business on August 14, 2014.

---

[43] *Id.* at Exhibit T.

DONE this 24th day of July, 2014.

_____
United States District Judge